# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NUTRANEXT BUSINESS, LLC, | CIVIL CASE NO.: 5:24-CV-00414 |
| Plaintiff/Counterclaim Defendant, | |
| v. | **DEFENDANT AMERICAN BEHAVIORAL RESEARCH INSTITUTE, LLC'S ANSWER AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT** |
| AMERICAN BEHAVIORAL RESEARCH INSTITUTE, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

Defendant American Behavioral Research Institute, LLC ("Defendant" or "ABRI"), by and through its counsel, submits the following Answer in response to the Complaint filed by Nutranext Business LLC ("Plaintiff") and asserts counterclaims as set forth below. Defendant, ABRI, answers the allegations in the numbered paragraphs of Plaintiff's Complaint, as set forth below.

## NATURE OF THE ACTION

1. In response to paragraph 1, ABRI **denies** the allegations therein.

2. In response to paragraph 2, ABRI **denies** the allegations therein for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

3. In response to paragraph 3, ABRI **denies** the allegations therein for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

4. In response to paragraph 4, ABRI states that any trademark registration documents speak for themselves and **denies** the allegations to the extent that the allegations are inconsistent with those documents.

5. In response to paragraph 5, ABRI states that this paragraph calls for a legal conclusion to which no response is required. To the extent that a response is required, ABRI **denies** the allegations therein.

6. In response to paragraph 6, ABRI **denies** the allegations therein.

1

7. In response to paragraph 7, ABRI **denies** the allegations therein.

8. In response to paragraph 8, ABRI **denies** the allegations therein.

9. In response to paragraph 9, ABRI states that this paragraph sets forth a legal conclusion to which no response is required. To the extent that a response is required, ABRI **denies** the allegations therein.

## JURISDICTION AND VENUE

10. In response to paragraph 10, ABRI **admits** that the Court has subject matter jurisdiction over claims about the Lanham Act, 15 U.S.C. § 1121, and over 28 U.S.C. §§ 1331, 1332, and 1338. ABRI **denies** that it has acted in violation of the statutory and common law provisions in the allegations therein.

11. In response to paragraph 11, ABRI states that this paragraph calls for a legal conclusion to which no response is required. To the extent that a response is required, ABRI **denies** that it has committed tortious acts or sold infringing products. However, ABRI **admits** it has sold products within the state and this District.

12. In response to paragraph 12, ABRI **denies** the allegations therein.

## THE PARTIES

13. In response to paragraph 13, ABRI **denies** the allegations for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

14. In response to paragraph 14, ABRI **denies** the allegations therein, except **admits** that ABRI advertises and sells Relaxium® products.

## FACTS COMMON TO ALL COUNTS FOR RELIEF

### Nutranext's Trademark and Trade Dress Rights

15. In response to paragraph 15, ABRI **denies** the allegations for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

16. In response to paragraph 16, ABRI **denies** the allegations for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

2

17. In response to paragraph 17, ABRI **denies** the allegations for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

18. In response to paragraph 18, ABRI **denies** the allegations for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein, except **denies** that Nutranext has rights in "calm" and refers all questions of law to this honorable Court.

19. In response to paragraph 19, ABRI states that any certified trademark registration documents speak for themselves and **denies** the remaining allegations.

20. In response to paragraph 20, ABRI states that this paragraph calls for a legal conclusion to which no response is necessary. To the extent that a response is required, ABRI **denies** the allegations for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

21. In response to paragraph 21, ABRI **denies** the allegations for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

22. In response to paragraph 22, ABRI **denies** the allegations for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

23. In response to paragraph 23, ABRI **denies** the allegations therein to the extent that Plaintiff is claiming any common law rights. To the extent that Plaintiff's allegations in paragraph 23 are not claiming common law rights and are merely designating a collective term for purposes of reference, ABRI accepts that Plaintiff has referred to certain allegations as the "CALM Marks."

24. In response to paragraph 24, ABRI **denies** the allegations for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein. To the extent that Plaintiff's allegations in paragraph 24 are merely designating a collective term for purposes of reference, ABRI accepts that Plaintiff has referred to certain allegations as "Natural Vitality Trademarks".

25. In response to paragraph 25, ABRI **denies** the allegations for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

26. In response to paragraph 26, ABRI **denies** the allegations for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

**ABRI Unlawful Acts**

27. In response to paragraph 27, ABRI **denies** the allegations therein.

28. In response to paragraph 28, ABRI **denies** the allegations therein, and refers to the packaging for its appearance.

29. In response to paragraph 29, ABRI **denies** the allegations therein.

30. In response to paragraph 30, ABRI **denies** the allegations therein.

31. In response to paragraph 31, ABRI **denies** that it needed a license, **admits** it did not have one, and **denies** the remaining allegations therein.

32. In response to paragraph 32, ABRI **denies** the allegations in the form alleged for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

33. In response to paragraph 33, ABRI **denies** the allegations for lack of knowledge or information sufficient to form a belief about the truth of the allegations therein.

34. In response to paragraph 34, ABRI **denies** the allegations therein.

35. In response to paragraph 35, ABRI **denies** the allegations therein.

36. In response to paragraph 36, ABRI **denies** the allegations therein.

37. In response to paragraph 37, ABRI **denies** the allegations therein, except **denies** knowledge or information about what Nutranext believes.

38. In response to paragraph 38, ABRI **denies** the allegations therein.

39. In response to paragraph 39, ABRI **denies** the allegations therein in the form alleged, but **admits** that it uses taglines on its products and in media.

40. In response to paragraph 40, ABRI **denies** the allegations therein.

41. In response to paragraph 41, ABRI **denies** the allegations therein, except **denies** for lack of knowledge or information sufficient to form a belief about the truth of the allegations about what Nutranext believes.

4

42. In response to paragraph 42, ABRI **denies** the allegations therein.

43. In response to paragraph 43, ABRI **denies** the allegations therein in the form alleged.

44. In response to paragraph 44, ABRI **denies** the allegations therein in the form alleged.

45. In response to paragraph 45, ABRI **denies** the allegations therein.

## FIRST CLAIM FOR RELIEF

### (Federal Infringement of Registered Trademarks Under 15 U.S.C. § 1114)

46. In response to paragraph 46, ABRI realleges and incorporates by reference each of its responses to the foregoing paragraphs with the same force and effect as if fully set forth herein.

47. In response to paragraph 47, ABRI states that this paragraph calls for a legal conclusion to which no response is necessary.  To the extent that a response is required, ABRI **denies** the allegations therein.

48. In response to paragraph 48, ABRI states that this paragraph calls for a legal conclusion to which no response is necessary.  To the extent that a response is required, ABRI **denies** the allegations therein.

49. In response to paragraph 49, ABRI **denies** the allegations therein.

50. In response to paragraph 50, ABRI **denies** the allegations therein.

51. In response to paragraph 51, ABRI **denies** the allegations therein.

52. In response to paragraph 52, ABRI **denies** the allegations therein.

## SECOND CLAIM FOR RELIEF

### (Trade Dress Infringement Under 15 U.S.C. § 1125(a)(3))

53. In response to paragraph 53, ABRI realleges and incorporates by reference each of its responses to the foregoing paragraphs with the same force and effect as if fully set forth herein.

54. In response to paragraph 54, ABRI states that this paragraph calls for a legal conclusion to which no response is necessary.  To the extent that a response is required, ABRI **denies** the allegations therein.

55. In response to paragraph 55, ABRI **denies** the allegations therein.

5

56. In response to paragraph 56, ABRI **denies** the allegations therein.

57. In response to paragraph 57, ABRI **denies** the allegations therein.

58. In response to paragraph 58, ABRI **denies** the allegations therein.

59. In response to paragraph 59, ABRI **denies** the allegations therein.

## THIRD CLAIM FOR RELIEF

**(False Designation of Origin, Infringement of Unregistered Marks, and Unfair Competition Under 15 U.S.C. § 1125(a))**

60. In response to paragraph 60, ABRI realleges and incorporates by reference each of its responses to the foregoing paragraphs with the same force and effect as if fully set forth herein.

61. In response to paragraph 61, ABRI states that this paragraph calls for a legal conclusion to which no response is necessary. To the extent that a response is required, ABRI **denies** the allegations therein.

62. In response to paragraph 62, ABRI **denies** the allegations therein.

63. In response to paragraph 63, ABRI **denies** the allegations therein.

64. In response to paragraph 64, ABRI **denies** the allegations therein.

65. In response to paragraph 65, ABRI **denies** the allegations therein.

66. In response to paragraph 66, ABRI **denies** the allegations therein.

## FOURTH CLAIM FOR RELIEF

**(False Advertising Under 15 U.S.C. § 1125(a))**

67. In response to paragraph 67, ABRI realleges and incorporates by reference each of its responses to the foregoing paragraphs with the same force and effect as if fully set forth herein.

68. In response to paragraph 68, ABRI states that this paragraph calls for a legal conclusion to which no response is necessary. To the extent that a response is required, ABRI **denies** the allegations therein.

69. In response to paragraph 69, ABRI **denies** the allegations therein.

70. In response to paragraph 70, ABRI **denies** the allegations therein.

71. In response to paragraph 71, ABRI **denies** the allegations therein.

72. In response to paragraph 72, ABRI **denies** the allegations therein.

73. In response to paragraph 73, ABRI **denies** the allegations therein.

74. In response to paragraph 74, ABRI **denies** the allegations therein.

75. In response to paragraph 75, ABRI **denies** the allegations therein.

76. In response to paragraph 76, ABRI **denies** the allegations therein.

77. In response to paragraph 77, ABRI **denies** the allegations therein.

**FIFTH CLAIM FOR RELIEF**

**(Common Law Trademark Infringement)**

78. In response to paragraph 78, ABRI realleges and incorporates by reference each of its responses to the foregoing paragraphs with the same force and effect as if fully set forth herein.

79. In response to paragraph 79, ABRI states that this paragraph calls for a legal conclusion to which no response is necessary.  To the extent that a response is required, ABRI **denies** the allegations therein.

80. In response to paragraph 80, ABRI **denies** the allegations therein.

81. In response to paragraph 81, ABRI **denies** the allegations therein.

82. In response to paragraph 82, ABRI **denies** the allegations therein.

83. In response to paragraph 83, ABRI **denies** the allegations therein.

**SIXTH CLAIM FOR RELIEF**

**(Unfair and Deceptive Trade Practices and Unfair Competition Under N.C. Gen. Stat. § 75-1.1, *et seq.*)**

84. In response to paragraph 84, ABRI realleges and incorporates by reference each of its responses to the foregoing paragraphs with the same force and effect as if fully set forth herein.

85. In response to paragraph 85, ABRI states that this paragraph calls for a legal conclusion to which no response is necessary.  To the extent that a response is required, ABRI **denies** the allegations therein.

7

86. In response to paragraph 86, ABRI **denies** the allegations therein.

87. In response to paragraph 87, ABRI **denies** the allegations therein.

88. In response to paragraph 88, ABRI **denies** the allegations therein.

89. In response to paragraph 89, ABRI **denies** the allegations therein.

90. In response to paragraph 90, ABRI **denies** the allegations therein.

91. In response to paragraph 91, ABRI **denies** the allegations therein.

92. In response to paragraph 92, ABRI **denies** the allegations therein, except **denies** for lack of knowledge or information sufficient to form a belief about the truth of the allegations about what Nutranext believes.

93. In response to paragraph 93, ABRI **denies** the allegations therein.

94. In response to paragraph 94, ABRI **denies** the allegations therein.

95. In response to paragraph 95, ABRI **denies** the allegations therein.

96. In response to paragraph 96, ABRI **denies** the allegations therein.

97. In response to paragraph 97, ABRI **denies** the allegations therein.

98. In response to paragraph 98, ABRI **denies** the allegations therein.

99. In response to paragraph 99, ABRI **denies** the allegations therein.

100.     In response to paragraph 100, ABRI **denies** the allegations therein.

*** 

In response to the prayer for relief, ABRI **denies** that Plaintiff is entitled to any such relief as claimed.

## **AFFIRMATIVE DEFENSES**

As to defenses to the Complaint, ABRI does not, by stating the matters set forth in these defenses, allege or admit that it has the burden of proof or persuasion with respect to any of these matters, and does not assume the burden of proof or persuasion on any matters as to which Plaintiff has the burden of proof or persuasion. The following defenses are based on ABRI's knowledge, information, and belief at this time, and ABRI specifically reserves the right to modify, amend, or supplement any defense contained in

8

this Answer. ABRI reserves the right to assert other defenses as information is gathered through discovery and investigation. ABRI incorporates its Answer to the Complaint herein.

### First Affirmative Defense

### (Failure to State a Claim)

The claims of the Complaint are barred, in whole or in part, because Plaintiff has failed to adequately state a claim for relief.

### Second Affirmation Defense

### (Laches & Estoppel)

Plaintiff is not entitled to any relief for the claims because Plaintiff's delay in bringing the suit was unreasonable and inexcusable, and ABRI suffered material prejudice due to the delay. As such, Plaintiff's claim is barred by the doctrines of laches and estoppel.

### Third Affirmative Defense

### (Statute of Limitations)

Plaintiff's claims for trademark infringement, trade dress infringement and unfair competition are barred in whole or in part by the applicable statute of limitations.

### Fourth Affirmative Defense

### (Acquiescence)

The claims in the Complaint are barred, in whole or in part, because Plaintiff, through its statements, conduct, actions, and/or inaction, has acquiesced in ABRI's right to use the asserted alleged marks and alleged trade dress.

### Fifth Affirmative Defense

### (No Entitlement to Injunctive Relief)

Plaintiff is not entitled to injunctive relief at least because any alleged injury to Plaintiff is not immediate or irreparable and Plaintiff has an adequate remedy at law for its claims. In addition, Plaintiff's delay in bringing suit belies any claim for irreparable harm.

9

**Sixth Affirmative Defense**

**(Waiver)**

The claims of the Complaint are barred, in whole or in part, by the doctrine of waiver due to Plaintiff's intentional relinquishment of known rights or intentional conduct inconsistent with those rights.

**Seventh Affirmative Defense**

**(Failure to Mitigate Damages)**

Plaintiff is not entitled to any relief because it has failed to comply with its duty to mitigate damages.

**Eighth Affirmative Defense**

**(Unclean Hands)**

Plaintiff is not entitled to any equitable relief as Plaintiff stands before this Court with unclean hands.

**Ninth Affirmative Defense**

**(Fair Use)**

The claims of the Complaint are barred, in whole or in part, on the grounds that any use by ABRI of Plaintiff's asserted trademarks is a fair use.

**Tenth Affirmative Defense**

**(Prior Use Under the Lanham Act)**

The claims of the Complaint are barred, in whole or in part, by 15 U.S.C. § 1115(b)(5), because of ABRI's use of the asserted marks and/or trade dress prior to the date of registration or constructive use claimed by Plaintiff.

**Eleventh Affirmative Defense**

**(Concurrent Use)**

The claims of the Complaint are barred, in whole or in part, because ABRI has become entitled to use one or more marks and the asserted trade dress as a result of concurrent lawful use of the marks in commerce.

## Twelfth Affirmative Defense

### (No Likelihood of Confusion)

The claims of the Complaint are barred, in whole or in part, because there is no likelihood of confusion between Plaintiff's alleged marks and trade dress, and ABRI's products.

## Thirteenth Affirmative Defense

### (No Protectable Trademarks or Trade Dress)

The claims are barred because Plaintiff's trademark and trade dress are incapable of being inherently distinctive and have not acquired secondary meaning.

## Fourteenth Affirmative Defense

### (Functionality)

The claims in the Complaint are barred, in whole or in part, to the extent Plaintiff asserts infringement of functional trademarks or trade dress design features.

## Fifteenth Affirmative Defense

### (Lack of Ownership)

The claims in the Complaint are barred, in whole or in part, to the extent Plaintiff fails to show ownership of valid trademarks or trade dress.

## Sixteenth Affirmative Defense

### (Priority)

The claims in the Complaint are barred, in whole or in part, to the extent ABRI is the senior user of the marks and/or trade dress asserted against it by Plaintiff.

## Seventeenth Affirmative Defense

### (Lack of Entitlement to Profits)

Plaintiff is not entitled to recover ABRI's profits as a remedy for trademark infringement in light of relevant factors including, but not limited to, absence of intent to deceive, adequacy of other remedies, and Plaintiff's unreasonable delay in asserting its rights.

## Eighteenth Affirmative Defense

### (Due Process)

Plaintiff's claims for damages are barred to the extent they seek to impose punitive damages that are grossly excessive or imposed without adequate procedural protections.

## Nineteenth Affirmative Defense

### (No Common Law Protectable Marks or Trade Dress)

Plaintiff has failed to offer a legally cognizable, specific expression of the character and scope of its purported common law (i.e., unregistered) trade dress.

## Twentieth Affirmative Defense

### (No Infringement)

The claims of the Complaint are barred, in whole or in part, because ABRI has not infringed any trademark and/or trade dress of Plaintiff.

## Twenty-First Affirmative Defense

### (No Willful Infringement)

ABRI has not engaged in any conduct that entitles Plaintiff to enhanced damages based on alleged willful infringement.

## Twenty-Second Affirmative Defense

### (Puffery)

ABRI's advertising statements identified in the Complaint do not constitute false advertising because they are "mere puffery" and/or protected by the First Amendment.

## Twenty-Third Affirmative Defense

### (Substantiation)

ABRI's advertising statements identified in the Complaint do not constitute false advertising because they are truthful.

## **RESERVATION OF DEFENSES**

ABRI reserves all defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the trademark laws of the United States, and any other defenses, at law or equity, that may exist now or in the future be available on discovery and further factual investigation.

## COUNTERCLAIMS

Defendant American Behavioral Research Institute, LLC ("Defendant" or "ABRI"), by and through its undersigned counsel, files these Counterclaims against Nutranext Business, LLC, and any successor ("Nutranext" or "Plaintiff"), and alleges on information and belief as to all other matters as follows:

### Nature of the Action

1. This is an action under 15 U.S.C. § 1125(a), N.C. Gen. Stat. § 75-1.1 *et seq.,* the common law, and 15 U.S.C. § 1119 for unfair competition, false and misleading advertising, fraud, and cancellation of a trademark.

ABRI and the Relaxium CALM and SLEEP Products

2. ABRI develops, manufactures, sells, markets, advertises, and/or otherwise promotes nutritional supplements under the brand name and registered trademark, Relaxium®.

3. ABRI has been marketing nutritional supplements under the brand name Relaxium® for more than ten years.

4. ABRI sells a nutritional supplement referred to as RELAXIUM® Calm ("RELAXIUM Calm") which contains magnesium as one of many ingredients.

5. ABRI has been selling RELAXIUM Calm since as early as 2013.

6. ABRI sells a nutritional supplement referred to as RELAXIUM® Sleep ("RELAXIUM Sleep") which contains magnesium as one of many ingredients.

7. ABRI has been selling RELAXIUM Sleep since as early as 2013.

8. Magnesium is a mineral that is often included in nutritional supplements because it has been proven to promote a feeling of calmness.

9. The label on the RELAXIUM Calm product has continuously had both words "RELAXIUM®" and "Calm" on the label since ABRI began marketing the product.

10. The label on the RELAXIUM Calm product contains the word "RELAXIUM®" to identify that the source of the product is ABRI.

14

11. The label on the RELAXIUM Calm product contains the word "Calm" to describe the effect of the product on a person.

12. The following is an image of the packaging of the RELAXIUM Calm product as it appeared in 2013 (the "2013 Calm Package"):



13. The 2013 Calm Package includes a label with the word "Calm" in a bold print.

14. The 2013 Calm Package includes a label with the word "Calm" in all capital letters.

15. The 2013 Calm Package includes a label with the word "Calm" prominently on its label.

16. The 2013 Calm Package is a white cylindrical container and lid.

17. The label on the 2013 Calm Package has a banded color scheme.

18. The label on the 2013 Calm Package has a distinctive-banded color scheme, including a band that identifies the flavor or variety of the product.

19. The 2013 Calm Package has the word "Calm" in a bold print in all capital letters on a blue color band.

20. The label on the RELAXIUM Sleep product has continuously had both words "RELAXIUM®" and "Sleep" on the label since ABRI began marketing the product.

21. The label on the RELAXIUM Sleep product contains the word "RELAXIUM®" to identify that the source of the product is ABRI.

15

22. The label on the RELAXIUM Sleep product contains the word "Sleep" to describe the effect of the product on a person.

23. The following is an image of the packaging of the RELAXIUM Sleep product as it appeared in 2013 (the "2013 Sleep Package"):



24. The 2013 Sleep Package includes a label with the word "Sleep" in a bold print.

25. The 2013 Sleep Package includes a label with the word "Sleep" in all capital letters.

26. The 2013 Sleep Package includes a label with the word "Sleep" prominently on its label.

27. The 2013 Sleep Package is a white cylindrical container and lid.

28. The label on the 2013 Sleep Package has a banded color scheme.

29. The label on the 2013 Sleep Package has a distinctive-banded color scheme, including a band that identifies the flavor or variety of the product.

30. The 2013 Sleep Package has the word "Sleep" in a bold print in all capital letters on a blue color band.

31. The Demand Letter included the following image of the RELAXIUM Calm product (the "Current Calm Package").



32. The Current Calm Package includes a label with the word "Calm" in a bold print.

16

33. The Current Calm Package includes a label with the word "Calm" in all capital letters.

34. The Current Calm Package includes a label with the word "Calm" prominently on its label.

35. The Current Calm Package is a white cylindrical container and lid.

36. The label on the Current Calm Package has a banded color scheme.

37. The label on the Current Calm Package has a distinctive-banded color scheme, including a band that identifies the flavor or variety of the product.

38. The Current Calm Package has the word "Calm" in a bold print in all capital letters on a blue color band.

39. The Demand Letter included the following image of the RELAXIUM Sleep product (the "Current Sleep Package").



40. The Current Sleep Package includes a label with the word "Sleep" in a bold print.

41. The Current Sleep Package includes a label with the word "Sleep" in all capital letters.

42. The Current Sleep Package includes a label with the word "Sleep" prominently on its label.

43. The Current Sleep Package is a white cylindrical container and lid.

44. The label on the Current Sleep Package has a banded color scheme.

45. The label on the Current Sleep Package has a distinctive-banded color scheme, including a band that identifies the flavor or variety of the product.

46. The Current Sleep Package has the word "Sleep" in a bold print in all capital letters on a blue color band.

47. To the extent that the Court finds that Plaintiff/Counterclaim Defendant has protectable trade dress as defined in the Complaint, then ABRI has protectable trade dress in its Relaxium® products that contain magnesium ("RELAXIM Magnesium Product Trade Dress") that consist of:

    a. A white cylindrical container and lid, with

    b. A label that has a banded color scheme, including a band that identifies the flavor or variety of the product, and

    c. the flavor or variety of the product written in capital bold letters on a blue color band.

48. To the extent that the court finds that ABRI has infringed any protectable trade dress owned by Plaintiff/Counterclaim Defendant, then Plaintiff/Counterclaim Defendant, with its Natural Vitality Calm product and its Natural Vitality Sleep product has infringed ABRI's protectable trade dress in its Relaxium® products that contain magnesium.

<u>Nutranext's Magnesium Supplements</u>

49. Upon information and belief, Nutranext owns a brand called Natural Vitality.

50. Upon information and belief, Nutranext markets nutritional supplements under its Natural Vitality brand.

51. Upon information and belief, Nutranext markets and offers for sale at least three nutritional supplements that contain magnesium under the brand Natural Vitality.

52. Upon information and belief, Nutranext markets and offers for sale a nutritional supplement that contains magnesium that it describes as promoting calm under the brand Natural Vitality. This product is sold with what Natural Vitality calls the product name "CALM."

53. Upon information and belief, Nutranext markets and offers for sale a nutritional supplement that contains magnesium that it describes as promoting sleep under the brand Natural Vitality. This product is sold with what Natural Vitality calls the product name "SLEEP."

54. Upon information and belief, Nutranext markets and offers for sale a nutritional supplement that contains magnesium that it describes as promoting focus under the brand Natural Vitality. This product is sold with what Natural Vitality calls the product name "FOCUS."

18

55. Upon information and belief, Nutranext promotes and advertises its Natural Vitality-branded products.

56. Upon information and belief, Nutranext has paid celebrities to promote and advertise its Natural Vitality-branded products.

57. Upon information and belief, Nutranext has paid Dr. Jacqueline (Jackie) Walters to endorse and advertise its Natural Vitality-branded products.

58. Dr. Walters endorsed Nutranext's Natural-Vitality branded products in a video that is publicly available at https://www.youtube.com/watch?v=RRtraAMBWzI (the "Video").

59. The Video does not have any written statement to inform the public that Dr. Walters was paid to endorse Nutranext's Natural Vitality-branded products, or that Dr. Walters was a paid influencer.

60. The Video does not include any audio statement to inform the public that Dr. Walters was paid to endorse Nutranext's Natural Vitality-branded products, or that Dr. Walters was a paid influencer.

61. Nutranext's failure to inform the public that Dr. Walters was paid to endorse its Natural Vitality-branded products violates 16 C.F.R. § 255, *et seq*.

62. Nutranext's failure to inform the public that Dr. Walters was paid to endorse its Natural Vitality-branded products either misled or would tend to mislead members of the public.

63. Upon information and belief, Nutranext's failure to inform the public that Dr. Walters was paid to endorse its product was willful.

64. Nutranext has used Dr. Walters' endorsement to promote its products.

65. Nutranext's failure to inform the public that Dr. Walters was paid to endorse its Natural Vitality-branded products constitutes false and misleading advertising.

66. Nutranext's failure to inform the public that Dr. Walters was paid to endorse its Natural Vitality-branded products constitutes a deceptive trade practice.

67. Nutranext advertises and offers for sale its Natural Vitality-branded products on the website betteryourhealth.com/naturalvitality/ (the "Website").

19

68. The Website includes a claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon."

69. Nutranext's Natural Vitality-branded products are offered for sale on Amazon.com.

70. Upon information and belief, the claim on the Website that the Natural Vitality products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" is false.

71. Upon information and belief, Nutranext made the false claim on the Website that the Natural Vitality products for sale on the Website have "60K+ 5-Star Review on Amazon" willfully.

72. Nutranext's false statement that the Natural Vitality products available for sale on the Website have "60K+ 5-Star Review of Amazon" misled or would tend to mislead members of the public.

73. Nutranext has used the statement that it has over 60,000 "5-Star Reviews on Amazon" to influence consumers and promote its Natural Vitality products.

74. The false claims on the Website that the Natural Vitality products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" constitutes false and misleading advertising.

75. Nutranext's false claims on the Website that the Natural Vitality products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" constitute a deceptive trade practice.

76. Upon information and belief, Nutranext has artificially inflated the Amazon ratings for Natural Vitality products by paying for positive reviews.

77. Upon information and belief, Nutranext has inflated its Amazon ratings by using fake positive reviews.

78. Nutranext's artificial inflation of the Amazon ratings for its Natural Vitality products violates 16 C.F.R. § 465, *et seq.*

79. Nutranext's artificial inflation of the Amazon ratings for its Natural Vitality products constitutes unfair competition.

80. Nutranext's artificial inflation of the Amazon ratings for its Natural Vitality products constitutes a deceptive trade practice.

81. The Website discloses a study (the "Study") with the following statement (the "Statement"): "our latest research collaboration with Biostrap shows Natural Vitality CALM Magnesium Powder helps reduce perceived stress and improve sleep."

82. The Statement exaggerates the actual results of the Study.

83. The Website discloses that the Study results were based on "responses from 46 of 65 participants."

84. The Website discloses that the results of the study were "statistically significant."

85. The Website does not disclose the details of the Study, including, *inter alia*, the Study design, and the reason that only 46 of 65 participants' responses were included in the results.

86. Upon information and belief, the results of the Study are not statistically significant.

87. The Statement is unsubstantiated at least because the results of the Study are not statistically significant.

88. Upon information and belief, the participants of the Study received compensation in the form of either money or free products in consideration for their participation in the Study.

89. This Study fails to disclose that participants of the Study received compensation in the form of either money or free products in consideration for their participation in the Study.

90. The failure to disclose the compensation of the participants in the Study renders the Statement false and misleading.

91. The compensation given to the participants in the Study renders the results of the Study unreliable.

92. Nutranext's placement of the Statement on the Website constitutes false and misleading advertising.

93. Nutranext's placement of the Statement on the Website constitutes a deceptive trade practice.

94. Upon information and belief, Nutranext's placement of the Statement on the Website was willful.

The Instant Dispute

95. On or about December 13, 2022, Nutranext, through its counsel, sent ABRI a demand letter ("Demand Letter") alleging that ABRI's magnesium supplement infringes on trade dress, four registered trademarks, and common law trademarks allegedly owned by Nutranext.

21

96. The Demand Letter includes an image of the RELAXIUM Calm product and identifies the accused product as RELAXIUM Calm.

97. The Demand Letter demands that ABRI immediately stop selling RELAXIUM Calm and commit to a redesign of its packaging to avoid further infringement.

98. The Demand Letter alleges that RELAXIUM Calm is stylized in a manner that is highly similar to Nutranext's mark.

99. On or about February 14, 2023, ABRI responded (the "Response"), through its counsel, to the Demand Letter.

100. The Response denied all allegations of wrongdoing by ABRI.

101. ABRI's Response concludes by stating that ABRI will not alter, rebrand, or stop selling its products.

102. Upon information and belief, Nutranext did not respond to ABRI's Response dated February 14, 2023, until filing this suit in July 2024.

103. Upon information and belief, there was no further communication between the parties or their counsel on this matter between ABRI's Response dated February 14, 2023, and July 16, 2024.

104. On or about July 16, 2024, Nutranext filed the Complaint in this matter.

Plaintiff's Alleged Federal Trademark Registrations Asserted in Complaint

105. In the Complaint Plaintiff asserted ownership over three federal trademark registrations (collectively the "Natural Vitality Registered Marks"); these registrations include: (1) U.S. Reg. No. 6,182,881; (2) U.S. Reg. No. 5,783,036; and (3) U.S. Reg. No. 5,487,830. *See* Certificates of Registration attached hereto as Exhibit 1, Exhibit 2, and Exhibit 3, respectively.

106. Upon information and belief, International Class 005 is the class of mark and description of products under which the Natural Vitality Registered Marks are registered in the United States Patent and Trademark Office.

107. International Trademark Class 005 is the class of mark and description of marks under which nutritional supplements and similar goods are sold.

22

108.    From an online search of the United States Patent and Trademark Office (USPTO) conducted on or about September 12, 2024, there are 5,181 total results returned for a query of marks that include the word "CALM" in International Class 005.

109.    From an online search of the USPTO, conducted on or about September 12, 2024, there are 1,653 results returned for a query of marks that include the word "CALM" in International Class 005 which are currently "live" and "registered."

110.    From an online search of the USPTO, conducted on or about September 12, 2024, there are 558 marks returned for a query for marks containing the word "CALM" in International Class 005 which are currently pending registration in the USPTO.

Plaintiff's Alleged Trademark U.S. Reg. No. 6,182,881

111.    Upon information and belief, the mark associated with U.S. Reg. No. 6,182,881 was applied for on August 19, 2019, and was registered on October 27, 2020.

112.    Upon information and belief, the mark associated with U.S. Reg. No. 6,182,881 is alleged to have been first used in commerce on July 31, 2019.

113.    Upon information and belief, the mark associated with U.S. Reg. No. 6,182,881 is a stylized mark for "NATURAL VITALITY CALM".

114.    Upon information and belief, the mark associated with U.S. Reg. No. 6,182,881 does not claim color as a feature of the mark.

115.    Upon information and belief, the mark associated with U.S. Reg. No. 6,182,881 disclaims the word "NATURAL."

116.    A disclaimed word in a trademark registration means that the word or element disclaimed is deemed to be descriptive and therefore not protectable as a trademark.

117.    Upon information and belief, the mark associated with U.S. Reg. No. 6,182,881 disclaims the word "CALM."

118.    The word "CALM" is descriptive of the products that Nutranext sells associated with this trademark registration.

119.     Upon information and belief, the mark associated with U.S. Reg. No. 5,783,036 was applied for on April 9, 2018.

120.     Upon information and belief, the mark associated with U.S. Reg. No. 5,783,036 was registered on June 18, 2019.

121.     Upon information and belief, the mark associated with U.S. Reg. No. 5,783,036 is alleged to have first been used in commerce on December 15, 2018.

122.     Upon information and belief, the mark associated with U.S. Reg. No. 5,783,036 is a wordmark for "NATURAL VITALITY CALM."

123.     Upon information and belief, the mark associated with U.S. Reg. No. 5,783,036 "consists of standard characters without any claim to any particular font style, size, or color."

124.     Upon information and belief, the mark associated with U.S. Reg. No. 5,783,036 disclaims the word "NATURAL."

125.     The word "CALM" is descriptive of the products that Nutranext sells associated with this trademark registration.

Plaintiff's Alleged Trademark U.S. Reg. No. 5,487,830

126.     Upon information and belief, the mark associated with U.S. Reg. No. 5,487,830 was applied for on April 13, 2017.

127.     Upon information and belief, the mark associated with U.S. Reg. No. 5,487,830 was registered on June 5, 2018.

128.     Upon information and belief, the mark associated with U.S. Reg. No. 5,487,830 was first used on September 14, 2017.

129.     Upon information and belief, the mark associated with U.S. Reg. No. 5,487,830 is alleged to have first been used in commerce on September 14, 2017.

130.     Upon information and belief, the mark associated with U.S. Reg. No. 5,487,830 is a wordmark for "NATURAL VITALITY'S CALM."

24

131. Upon information and belief, the mark associated with U.S. Reg. No. 5,487,830 "consists of standard characters without claim to any particular font style, size, or color."

132. Upon information and belief, the mark associated with U.S. Reg. No. 5,487,830 disclaims the word "NATURAL."

133. Upon information and belief, the mark associated with U.S. Reg. No. 5,487,830 disclaims the word "CALM."

134. The word "CALM" is descriptive of the products that Nutranext sells associated with this trademark registration.

Plaintiff's Alleged "SLEEP" Trademark – U.S. Trademark Registration No. 7,263,470

135. Upon information and belief, the mark associated with U.S. Reg. No. 7,263,470 was applied for on April 18, 2022.

136. Upon information and belief, the mark associated with U.S. Reg. No. 7,263,470 was registered on January 2, 2024. *See* Exhibit 4.

137. Upon information and belief, the mark associated with U.S. Reg. No. 7,263,470 was first used on November 8, 2023.

138. Upon information and belief, the mark associated with U.S. Reg. No. 7,263,470 is alleged to have first been used in commerce on November 8, 2023.

139. Upon information and belief, the mark associated with U.S. Reg. No. 7,263,470 is a wordmark for "NATURAL VITALITY SLEEP."

140. Upon information and belief, the mark associated with U.S. Reg. No. 7,263,470 "consists of standard characters without claim to any particular font style, size, or color."

141. Upon information and belief, the mark associated with U.S. Reg. No. 7,263,470 disclaims the word "NATURAL."

142. Upon information and belief, the mark associated with U.S. Reg. No. 7,263,470 disclaims the word "SLEEP."

143. The word "SLEEP" is descriptive of the products that Nutranext sells associated with this trademark registration.

144. ABRI has sold the RELAXIUM Sleep product since at least 2013.

**COUNTERCLAIM CAUSES OF ACTION**

**COUNT 1**

**(False Advertising and Unfair Competition Under 15 U.S.C. §1125(a))**

145. ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

146. The Statement is an advertisement for a product marketed and sold in interstate commerce.

147. The Statement is false and misleading.

148. The Statement constitutes unfair competition.

149. The Statement constituted false advertising.

150. The Statement deceived and/or has the capacity to deceive consumers and/or the public.

151. The use of the Statement is a deceptive trade practice.

152. The Statement has a material effect on the purchasing decision of consumers and/or the public.

153. Upon information and belief, Plaintiff deliberately and willfully made such false and misleading statements.

154. ABRI is a competitor of Plaintiff and sustained a competitive injury as a result of Plaintiff's false and misleading advertisement of the Statement.

155. ABRI has been injured as a result of Plaintiff's unfair competition, deceptive trade practices, and false advertising due to the Statement.

156. Because Plaintiff's unfair competition violate 15 U.S.C. §1125(a) causes harm to the public, Plaintiff must be preliminarily and permanently enjoined from making such false and misleading claims in the future.

157.     As a result of Plaintiff's false and misleading advertisements and unfair competition, in violation of 15 U.S.C. §1125(a), ABRI has lost profits and lost value in its own commercial advertisements and its ability to attract customers. ABRI therefore is entitled to recover damages, punitive damages, as well as reasonable attorneys' fees.

## COUNT 2

### (False Advertising and Unfair Competition Under 15 U.S.C. §1125(a))

158.     ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

159.     The claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" as stated on the Website is an advertisement for a product(s) marketed and sold in interstate commerce.

160.     Upon information and belief, the claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" is false and misleading.

161.     The use of the claim that the products for sale on the Website have "60K+ 5-Star Reviews on Amazon" is a deceptive trade practice.

162.     Upon information and belief, many of the reviews on Amazon were improperly procured in violation of 16 C.F.R. § 465, *et seq*.

163.     Upon information and belief, many of the reviews on Amazon were procured in bad faith.

164.     The claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" constitutes unfair competition.

165.     The improper procurement of artificial reviews on Amazon constitutes unfair competition.

166.     The claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" deceived and/or has the capacity to deceive consumers and/or the public.

167.     The improper procurement of artificial reviews on Amazon deceived and/or has the capacity to deceive consumers and/or the public.

27

168.     The claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" has a material effect on the purchasing decisions of consumers and/or the public.

169.     The improper procurement of artificial reviews on Amazon has a material effect on the purchasing decisions of consumers and/or the public.

170.     Upon information and belief, Plaintiff deliberately and willfully made such false and misleading statements and deliberately and willfully improperly procured artificial reviews on Amazon.

171.     ABRI, as a competitor of Plaintiff, has sustained a competitive injury as a result of Plaintiff's false and misleading advertisement that such products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" as stated on the Website and as a result of Plaintiff's improper procurement of artificial reviews on Amazon.

172.     ABRI, as a competitor of Plaintiff, has sustained a competitive injury as a result of Plaintiff's unfair competition due to the claim that such products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" as stated on the Website and as a result of Plaintiff's improper procurement of artificial reviews on Amazon.

173.     Because Plaintiff's false and misleading advertisement and unfair competition violates 15 U.S.C. §1125(a), and causes harm to the public, Plaintiff must be preliminarily and permanently enjoined from making such false and misleading claims and from improper procurement of artificial reviews on Amazon in the future.

174.     As a result of Plaintiff's false and misleading advertisements and unfair competition, in violation of 15 U.S.C. §1125(a), ABRI has lost profits and lost value in its own commercial advertisements and its ability to attract customers. ABRI therefore is entitled to recover damages, punitive damages as well as reasonable attorneys' fees.

28

## COUNT 3

### (False Advertising and Unfair Competition Under 15 U.S.C. §1125(a))

175.     ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

176.     The Video is an advertisement for a product(s) marketed and sold in interstate commerce.

177.     The Video contains representations which are false and/or misleading.

178.     The Video constitutes unfair competition.

179.     The Video deceived and/or has the capacity to deceive consumers and/or the public.

180.     The Video has a material effect on the purchasing decisions of consumers and/or the public.

181.     Plaintiff deliberately and willfully made such false and misleading statements in the Video.

182.     Plaintiff engaged in unfair competition as based upon the representations in the Video violates 16 C.F.R. § 255, *et seq*.

183.     Plaintiff's use of the Video is a deceptive trade practice.

184.     ABRI, as a competitor of Plaintiff, has sustained a competitive injury as a result of Plaintiff's false and misleading Video.

185.     ABRI, as a competitor of Plaintiff, has sustained a competitive injury as a result of Plaintiff's unfair competition due to the Video.

186.     Because Plaintiff's false and misleading advertisement and unfair competition in the Video violates 15 U.S.C. §1125(a), and causes harm to the public, Plaintiff must be preliminarily and permanently enjoined from making such false and misleading claims in the future.

187.     As a result of Plaintiff's false and misleading advertisements and unfair competition, in violation of 15 U.S.C. §1125(a), ABRI has lost profits and lost value in its own commercial advertisements and its ability to attract customers. ABRI therefore is entitled to recover damages, punitive damages, as well as reasonable attorneys' fees.

29

## COUNT 4

**(Unfair and Deceptive Trade Practices Under N.C. Gen. Stat. § 75-1.1, *et seq.*)**

188.     ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

189.     The description of the Study on the Website has the capacity or tendency to deceive.

190.     The description of the Study on the Website is a deceptive act or practice.

191.     The description of the Study on the Website is substantially injurious to consumers.

192.     Because the Study as described on the Website is unfair, substantially injurious to consumer, and/or is a deceptive act or practice, the Study described on the Website violates N.C. Gen. Stat. § 75-1.1.

193.     Because the Study as described on the Website violates N.C. Gen. Stat. § 75-1.1, Plaintiff must be preliminarily and permanently enjoined from making such false and misleading claims in the future.

194.     As a result of Plaintiff's description of the Study on the Website, in violation of N.C. Gen. Stat. § 75-1.1, ABRI has lost profits and lost value in its own commercial advertisements and its ability to attract customers.  ABRI is therefore entitled to recover damages, punitive damages, if appropriate, as well as reasonable attorneys' fees.

## COUNT 5

**(Unfair and Deceptive Trade Practices Under N.C. Gen. Stat. § 75-1.1, *et seq.*)**

195.     ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

196.     The claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" described on the Website has the capacity or tendency to deceive.

197.     The procurement of artificial reviews on Amazon has the capacity or tendency to deceive.

198.     The claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" described on the Website is a deceptive act or practice.

30

199.     The procurement of artificial reviews on Amazon is a deceptive act or practice and violates 16 C.F.R. § 465, *et seq.*

200.     The claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" as stated on the Website is substantially injurious to consumers.

201.     The procurement of artificial reviews on Amazon is substantially injurious to consumers.

202.     Because the claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" as stated on the Website and the procurement of artificial reviews on Amazon are unfair, substantially injurious to consumer, and/or is a deceptive act or practice, the claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" as stated on the Website and the procurement of artificial reviews on Amazon violate N.C. Gen. Stat. § 75-1.1.

203.     Because the claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" described on the Website and the procurement of artificial reviews on Amazon violate N.C. Gen. Stat. § 75-1.1, Plaintiff must be preliminarily and permanently enjoined from making such false and misleading claims in the future.

204.     As a result of Plaintiff's claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" described on the Website and procurement of artificial reviews on Amazon, in violation of N.C. Gen. Stat. § 75-1.1, ABRI has lost profits and lost value in its own commercial advertisements and its ability to attract customers. ABRI is therefore entitled to recover damages, punitive damages, as well as reasonable attorneys' fees.

## COUNT 6

**(Unfair and Deceptive Trade Practices Under N.C. Gen. Stat. § 75-1.1, *et seq.*)**

205.     ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

206.     The Video has the capacity or tendency to deceive.

207.     The Video is a deceptive act or practice.

31

208.     The Video is substantially injurious to consumers.

209.     Because the Video is unfair, substantially injurious to consumer, and/or is a deceptive act or practice, the Video violates N.C. Gen. Stat. § 75-1.1.

210.     Because the Video violates N.C. Gen. Stat. § 75-1.1, Plaintiff must be preliminarily and permanently enjoined from making such false and misleading claims in the future.

211.     As a result of Plaintiff's advertisement via the Video, in violation of N.C. Gen. Stat. § 75-1.1, ABRI has lost profits and lost value in its own commercial advertisements and its ability to attract customers.  ABRI is therefore entitled to recover damages, punitive damages, as well as reasonable attorneys' fees.

## COUNT 7

### (Common Law Fraud)

212.     ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

213.     The Study on the Website failed to include information that is necessary for the Study to be analyzed by consumers.

214.     The Study on the Website failed to inform consumers that participants were paid or otherwise compensated for their participation in the Study.

215.     That participants were paid or otherwise compensated for their participation in the Study is a material fact that was concealed from consumers.

216.     The Website makes a false representation that the results of the Study are statistically significant.

217.     Upon information and belief, the description of the Study on the Website is a false representation and/or conceals a material fact.

218.     Upon information and belief, the description of the Study on the Website was reasonably calculated to deceive consumers and/or the public.

32

219.     Upon information and belief, the description of the Study on the Website was made with the intent to deceive.

220.     Upon information and belief, the description of the Study on the Website deceived and/or continues to deceive consumers and/or the public.

221.     ABRI has been injured as a result of the description of the Study on the Website.

222.     As a result of the description of the Study on the Website, ABRI has suffered lost profits and sales and lost value in its own commercial advertisements and its ability to attract customers.

223.     ABRI is therefore entitled to recover damages, punitive damages, if appropriate, as well as reasonable attorneys' fees.

## COUNT 8

### (Common Law Fraud)

224.     ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

225.     The claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" is a false representation and/or a concealment of a material fact.

226.     Plaintiff was aware that it did not have over 60,000 5-Star reviews when it published such Statement on its Website.

227.     Plaintiff did not have over 60,000 legitimate 5-Star reviews on Amazon when it published the Statement.

228.     The procurement of artificial reviews on Amazon is a false representation and/or a concealment of a material fact.

229.     The claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" is reasonably calculated to deceive and was made with the intent to deceive.

230.     The procurement of artificial reviews on Amazon is reasonably calculated to deceive and was made with the intent to deceive.

231. The claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" deceived and/or continues to deceive consumers and/or the public.

232. The procurement of artificial reviews on Amazon deceived and/or continues to deceive consumers and/or the public.

233. Upon information and belief, the claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" and the procurement of artificial reviews on Amazon were made and done willfully.

234. ABRI has been injured as a result of the claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" and as a result of the procurement of artificial reviews on Amazon.

235. As a result of the claim that the products available for sale on the Website have "60K+ 5-Star Reviews on Amazon" and of the procurement of artificial reviews on Amazon, ABRI has suffered lost profits and sales and lost value in its own commercial advertisements and its ability to attract customers.

236. ABRI is therefore entitled to recover damages, punitive damages, as well as reasonable attorneys' fees.

## COUNT 9

### (Common Law Fraud)

237. ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

238. The video makes the false representation that Dr. Walters was, without payment or compensation, recommending that viewers of the video try the Natural Vitality products.

239. The Video conceals the material fact that Nutranext paid Dr. Walters to advertise and promote the Natural Vitality products.

240. Because the Video does not disclose a material connection between the endorser and Plaintiff, the representations in the Video are reasonably calculated to deceive.

34

241.     Because the Video conceals the material fact that Nutranext paid Dr. Walters to advertise and promote the Natural Vitality products, the representations in the Video are reasonably calculated to deceive.

242.     Upon information and belief, the Video was made with the intent to deceive.

243.     Upon information and belief, the Video deceived and/or continues to deceive consumers and/or the public.

244.     ABRI was injured as a result of the false misrepresentations in the Video.

245.     ABRI was injured as a result of the material fact(s) concealed in the Video.

246.     As a result of the Video, ABRI has suffered lost profits and sales and lost value in its own commercial advertisements and its ability to attract customers.

247.     ABRI is therefore entitled to recover damages, punitive damages, as well as reasonable attorneys' fees.

## COUNT 10

**(Cancellation of Trademark U.S. Reg. No. 5,783,036 Under 15 U.S.C. § 1119)**

248.     ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

249.     U.S. Trademark Reg. No. 5,783,036 includes the word "calm".

250.     The word "calm" is descriptive of the products for which this trademark is registered, under International Class 005.

251.     The word "calm" in this trademark is not disclaimed.

252.     The trademark is merely descriptive when used on or in connection with the goods sold by Nutranext.

253.     U.S. Trademark Reg. No. 5,783,036 is invalid, and therefore should be cancelled.

35

## COUNT 11

### (Unfair Competition Under 15 U.S.C. §1125(a))

254.     ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

255.     Plaintiff is attempting to monopolize the market for the word "CALM" in which they have no registered rights and cannot have any common law rights because the word "CALM" is purely descriptive.

256.     Plaintiff's misuse of the word CALM affects interstate commerce.

257.     Plaintiff's misuse of the legal protections afforded to trademarks is false and misleading.

258.     Plaintiff's misuse of the legal protections afforded to trademarks constitutes unfair competition.

259.     Plaintiff's misuse of the legal protections afforded to trademarks has deceived and/or has the capacity to deceive consumers and/or the public.

260.     Plaintiff's misuse of the legal protections afforded to trademarks is a deceptive trade practice.

261.     Plaintiff's misuse of the legal protections afforded to trademarks has a material effect on the purchasing decision of consumers and/or the public.

262.     Upon information and belief, Plaintiff deliberately and willfully misused the legal protections afforded to trademarks.

263.     ABRI is a competitor of Plaintiff and sustained a competitive injury as a result of Plaintiff's false and misleading misuse of the legal protections afforded to trademarks.

264.     ABRI has been injured as a result of Plaintiff's unfair competition and deceptive trade practices due Plaintiff's misuse of the legal protections afforded to trademarks.

265.     Because Plaintiff's unfair competition violates 15 U.S.C. §1125(a) causes harm to the public, Plaintiff must be preliminarily and permanently enjoined from misusing the legal protections afforded to trademarks in the future.

36

266.     As a result of Plaintiff's unfair competition, in violation of 15 U.S.C. §1125(a), ABRI has

lost profits and lost value in its own commercial advertisements and its ability to attract customers.

ABRI therefore is entitled to recover damages, punitive damages, as well as reasonable attorneys'

fees.

## COUNT 12

**(Unfair and Deceptive Trade Practices Under N.C. Gen. Stat. § 75-1.1, *et seq.*)**

267.     ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as

if they were fully set forth here.

268.     Plaintiff is attempting to monopolize the market for the word "CALM" in which they have

no registered rights and cannot have any common law rights because the word "CALM" is purely

descriptive.

269.     Plaintiff's misuse of the legal protections afforded to trademarks has the capacity or

tendency to deceive.

270.     Plaintiff's misuse of the legal protections afforded to trademarks is a deceptive act or

practice.

271.     Plaintiff's misuse of the legal protections afforded to trademarks is substantially injurious

to consumers.

272.     Because Plaintiff's misuse of the legal protections afforded to trademarks is unfair,

substantially injurious to consumer, and/or is a deceptive act or practice, Plaintiff's misuse of the

legal protections afforded to trademarks violates N.C. Gen. Stat. § 75-1.1.

273.     Because Plaintiff's misuse of the legal protections afforded to trademarks violates N.C.

Gen. Stat. § 75-1.1, Plaintiff must be preliminarily and permanently enjoined from making such

false and misleading claims in the future.

274.     As a result of Plaintiff's misuse of the legal protections afforded to trademarks, in violation

of N.C. Gen. Stat. § 75-1.1, ABRI has lost profits and lost value in its own commercial

37

advertisements and its ability to attract customers. ABRI is therefore entitled to recover damages, punitive damages, if appropriate, as well as reasonable attorneys' fees.

<u>**COUNT 13**</u>

**(Cancellation of Trademark U.S. Reg. No. 7,263,470 Under 15 U.S.C. § 1119)**

275.     ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

276.     Upon information and belief, Nutranext is the owner of the trademark registered in the USPTO, U.S. Trademark Reg. No. 7,263,470.

277.     U.S. Trademark Reg. No. 7,263,470 includes the word "sleep".

278.     U.S. Trademark Reg. No. 7,263,470 alleges date of first use of the mark on November 8, 2023.

279.     ABRI has sold its RELAXIUM Sleep product continuously since at least 2013.

280.     The 2013 Sleep Package uses incorporates the word "Sleep" in capital bold letters.

281.     The Current Sleep Package was sold and offered for sale at least as early as November 2022, when Plaintiff/Counterclaim Defendant included an image of the Current Sleep Package in its letter to ABRI.

282.     The Current Sleep Package incorporates the word "SLEEP" in capital bold letters.

283.     To the extent that the Court finds that Defendant/Counterclaimant's RELAXIUM Calm product infringes on U.S. Reg. No. 5,783,036 based on ABRI's use of the word "Calm," in the RELAXIUM Calm product (which ABRI does not concede), then Nutranext's U.S. Trademark Reg. No. 7,263,470 is not properly registered because it does not have priority over ABRI's use of the "SLEEP" mark in the RELAXIUM Sleep product.

284.     Nutranext's U.S. Trademark Reg. No. No. 7,263,470 is invalid, and therefore should be cancelled.

38

## COUNT 14

### (Trade Dress Infringement)

285.    ABRI repeats and incorporates by reference the allegations in the preceding paragraphs as if they were fully set forth here.

286.    This is a claim for trade dress infringement under 15 U.S.C. § 1125(a)(3).

287.    To the extent that the Court finds that Nutranext has any protectable trade dress that is identified in the Complaint (which ABRI does not concede), then since the RELAXIUM Magnesium Product Trade Dress is non-functional, inherently distinctive, well-known,  it is valid and protectable trade dress.

288.    To the extent that the Court finds that ABRI infringes any protectable trade dress owned by Nutranext that is identified in the Complaint (which ABRI does not concede), Plaintiff/Counterclaim Defendant, with its Natural Vitality Calm product and its Natural Vitality Sleep product is using a confusingly similar imitation of the RELAXIUM Magnesium Product Trade Dress in connection with its marketing, distribution, and sales of an unlicensed and unauthorized competing product in interstate commerce.  This conduct is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Plaintiff/Counterclaim Defendant's product is manufactured, distributed, authorized, licensed, or endorsed by ABRI or that Plaintiff/Counterclaim Defendant's goods are associated or connected with ABRI, or has the sponsorship or approval of ABRI, when that is not the case.

289.    Nutranext has used confusingly similar imitations of the RELAXIUM Magnesium Product Trade Dress, and Nutranext's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of consumers, members of the trade, and the public, and, additionally, injury to ABRI's goodwill and reputation as symbolized by the RELAXIUM Magnesium Product Trade Dress all in violation of 15 U.S.C. § 1125(a)(3), for which ABRI has no adequate remedy at law.

290.     Nutranext's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the RELAXIUM Magnesium Product Trade Dress to ABRI's great and irreparable injury.

291.     Nutranext has caused and is likely to continue to cause substantial injury to the public and to ABRI, and ABRI is entitled to injunctive relief, its actual damages, an accounting of Nutranext's profits, and reasonable attorneys' fees under 15 U.S.C. §§ 1116 & 1117.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, ABRI respectfully requests that this Court enter judgment in its favor on the ABRI claims set forth above, and award ABRI relief including, but not limited to:

1.  That the costs of this action be taxed against Plaintiff;

2.  Nutranext, and all its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for or on behalf of Nutranext, or in concert or in participation with Nutranext, be enjoined permanently from:

    a.  Advertising the results of the Study as having statistically significant positive results and/or advertising the results of the Study without prominent disclosure of all Study details.

    b.  Advertising its products as having received "60K+ 5-Star Reviews on Amazon."

    c.  Procuring fake and artificial reviews to be used on Amazon;

    d.  Advertising its products via paid endorsements and/or sponsorships without disclosing that said celebrities, endorsers, sponsors and/or other promoters were and/or are compensated for their endorsement, sponsorship, or other similar type of promotion of Nutranext's products; and

    e.  Threatening lawsuits based on false assertion that it has exclusive rights to the term "CALM" for dietary supplements.

3.  The cancellation of U.S. Trademark Reg. No. 5,783,036.

4.  The cancellation of U.S. Trademark Reg. No. No. 7,263,470.

5.  Nutranext be compelled to account to ABRI for any and all profits in connection with its trade dress

infringement, and for all damages caused to ABRI under federal law, North Carolina state law, and common law.

6. Nutranext be compelled to account to ABRI for any and all profits in connection with its false and misleading advertisements and unfair competition, and for all damages caused to ABRI under federal law, North Carolina state law, and common law.

7. Nutranext be compelled to pay ABRI treble award of Nutranext's profits based on its false and misleading advertisements and unfair competition.

8. Nutranext be required to pay ABRI the cost of this action and ABRI's reasonable attorneys' fees.

9. Nutranext be required to pay ABRI punitive damages to deter its conduct in the future.

10. Such other and further relief as this Court may deem just and proper.

***

Defendant/Counterclaim Plaintiff hereby demands a jury trial where applicable.

This 1st day of October, 2024.


**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

*/s/ Michael S. Rothrock*
Michael S. Rothrock, NC Bar # 38469
Wilson Elser Moskowitz Edelman & Dicker LLP
150 Fayetteville Street, Suite 300
Raleigh, NC 27601
T: (984)-268-2121
F: (984) 268-2120
michael.rothrock@wilsonelser.com
*Local Rule 83.1 Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Christopher M. Thomas
Andrew P. Tabeling
Parker Poe Adams & Bernstein, LLP
P.O. Box 389
Raleigh, NC 27602-0389
christhomas@parkerpoe.com
andytabeling@parkerpoe.com
*Local Rule 83.1 Counsel for Plaintiff*

This 1st day of October, 2024.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

***/s/ Michael S. Rothrock***
Michael S. Rothrock, NC Bar # 38469
Wilson Elser Moskowitz Edelman & Dicker LLP
150 Fayetteville Street, Suite 300
Raleigh, NC 27601
T: (984)-268-2121
F: (984) 268-2120
michael.rothrock@wilsonelser.com
*Local Rule 83.1 Attorney for Defendant*

42

# EXHIBIT 1

# United States of America
## United States Patent and Trademark Office



NATURAL ◆ VITALITY
# CALM

| | |
|---|---|
| **Reg. No. 6,182,881** | Nutranext Business, LLC (DELAWARE LIMITED LIABILITY COMPANY) |
| | 1301 Sawgrass Corporate Parkway |
| **Registered Oct. 27, 2020** | Sunrise, FLORIDA 33323 |
| **Int. Cl.: 3, 5** | CLASS 3: Non-medicated skin and body magnesium cream |
| **Trademark** | FIRST USE 10-31-2019; IN COMMERCE 10-31-2019 |
| **Principal Register** | CLASS 5: Dietary and Nutritional Supplements |
| | FIRST USE 7-31-2019; IN COMMERCE 7-31-2019 |

The mark consists of the word "NATURAL" in all Caps. To the right of the word "NATURAL" is a water drop with a leaf floating inside the water drop. To the right of the water drop is the word "VITALITY" in all Caps. Immediately underneath the words "NATURAL VITALITY" is the word "CALM" in large bold letters.

No claim is made to the exclusive right to use the following apart from the mark as shown: "NATURAL" AND "CALM"

SER. NO. 88-583,987, FILED 08-19-2019



Director of the United States
Patent and Trademark Office

## REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

## WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT 2

# United States of America
## United States Patent and Trademark Office

# Natural Vitality Calm

**Reg. No. 5,783,036**

**Registered Jun. 18, 2019**

**Int. Cl.: 5**

**Trademark**

**Principal Register**

Nutranext Business, LLC  (DELAWARE LIMITED LIABILITY COMPANY)
1301 Sawgrass Corporate Parkway
Sunrise, FLORIDA 33323

CLASS 5: Dietary and Nutritional Supplements

FIRST USE 12-15-2018; IN COMMERCE 12-15-2018

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "NATURAL"

SER. NO. 87-869,111, FILED 04-09-2018



Director of the United States
Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT 3

# United States of America
## United States Patent and Trademark Office

# Natural Vitality's Calm

**Reg. No. 5,487,830**

**Registered Jun. 05, 2018**

**Int. Cl.: 5**

**Trademark**

**Principal Register**

Nutranext Business, LLC (DELAWARE LIMITED LIABILITY COMPANY)
1301 Sawgrass Corporate Parkway
Sunrise, FLORIDA 33323

CLASS 5: Dietary and Nutritional Supplements

FIRST USE 9-14-2017; IN COMMERCE 9-14-2017

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "NATURAL" AND "CALM"

SER. NO. 87-409,807, FILED 04-13-2017



Director of the United States
Patent and Trademark Office

---
**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**
---

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# EXHIBIT 4

# United States of America

## United States Patent and Trademark Office

# NATURAL VITALITY SLEEP

**Reg. No. 7,263,470**

**Registered Jan. 02, 2024**

**Int. Cl.: 5**

**Trademark**

**Principal Register**

Nutranext Business, LLC  (DELAWARE LIMITED LIABILITY COMPANY)
1221 Broadway
Oakland, CALIFORNIA 94612

CLASS 5: Dietary and nutritional supplements

FIRST USE 11-8-2023; IN COMMERCE 11-8-2023

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "NATURAL" and "SLEEP"

SER. NO. 97-368,177, FILED 04-18-2022

*Katherine Kelly Vidal*

Director of the United States
Patent and Trademark Office



REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.